# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO 18-CV-61722-WPD

| | |
|---|---|
| CYDNEY HALPERIN,<br>individually and on behalf of all others<br>similarly situated, | **CLASS ACTION** |
| *Plaintiff*, | **JURY TRIAL DEMANDED** |
| v. | |
| YOUFIT HEALTH CLUBS, LLC a Florida<br>limited liability company, | |
| *Defendant*, | |
| _____/ | |

**PLAINTIFF'S AND CLASS COUNSEL'S UNOPPOSED
MOTION FOR FINAL APPROVAL**

1

Plaintiff Cydney Halperin sued YouFit Health Clubs, LLC, ("YouFit") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") claiming that she was sent unauthorized marketing text messages. The parties negotiated a settlement on behalf of plaintiff and a class of approximately 155,818 consumers who received text messages from Defendant. On May 29, 2019, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval. Plaintiff and Class Counsel now seek Final Approval of the Settlement.

## I. INTRODUCTION

Plaintiff received text messages from Defendant on or about May 8, 2018, offering her a discounted gym membership. Defendant sent similar text messages and other text messages related to the offering of YouFit's products and services to approximately 155,818 other individuals. Plaintiff sued alleging that the above described text messages were sent in violation of the TCPA and without express written consent. The parties participated in full-day mediation with Rodney Max, a well-respected mediator in South Florida, and continued discussions following the mediation. After multiple telephone calls in a further attempt to resolve the Action, the Parties agreed to settle the Action to avoid the risks and uncertainties associated with continued litigation. The Settlement Agreement makes $1,418,635.00 available to the settlement class, which will also be used to pay the costs of Settlement Administration and attorneys' fees. *See* Settlement Agreement and Release ("Agreement" or "Settlement") attached as *Exhibit A*.[1] Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in paragraph 7 of the Agreement; and (5) enter Final Judgment dismissing the Action with prejudice.

## II. MOTION FOR FINAL APPROVAL

### A. Procedural History

On July 25, 2018, Plaintiff initiated this litigation against Defendant in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [DE #1]. The Parties engaged in intensive arm's-length negotiations over

---

[1] All capitalized terms used herein have the same definitions as those defined in the Agreement.

multiple days to resolve the Case with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice. On March 5, 2019, with the assistance of mediator Rodney Max of Upchurch Watson White and Max, the Parties and their counsel met in Miami, Florida and engaged in intensive arm's-length negotiations and an all-day mediation to resolve the Action. Following mediation, the Parties' counsel continued to engage in lengthy telephone negotiations in a further attempt to reach a resolution and, the Parties reached settlement.

### B. Summary of the Settlement Terms

The Settlement terms are detailed in the Agreement attached. The following is a summary of its material terms.

#### 1. The Settlement Class

The proposed Settlement establishes a Settlement Class of all members of the classes of persons in this Action as follows:

> All persons who from four years prior to the filing of this action (1) were sent a text message from YouFit related to the offering of YouFit's products or services and (2) who were not members of YouFit at the time he or she was sent the text message and (3) who did not consent to receive the text messages.

Agreement Section I(GG). Excluded from the Settlement Class are: (i) the district judge and magistrate judge presiding over this case, the judges of the United States Court of Appeals for the Eleventh Circuit, their spouses, and persons within the third degree of relationship to either of them; (2) individuals who are or were during the Class Period agents, directors, employees, officers, or servants of YouFit or of any affiliate or parent of YouFit; (3) Plaintiff's counsel and their employees, and (4) all persons who file a timely and proper request to be excluded from the Settlement Class.

#### 2. Settlement Consideration

Pursuant to the Settlement, Defendant has agreed to make up to $1,418,635.00 available for the benefit of Settlement Class Members ("Settlement Fund").

#### 4. The Notice Program

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee

3

application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfies all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

### 5. Claims Process

The Claims Process here is straightforward, easy to understand for Settlement Class members, and designed so that they can easily claim their portion of the Settlement Fund. Settlement Class members will make a claim by submitting a valid Claim Form to the Settlement Administrator, which will then be evaluated for timeliness and completeness. A copy of the Claim Form is attached to the Settlement Agreement as Exhibit 1. Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website. The Claim Form requires basic information from Settlement Class members: (1) name; (2) current address; (3) cellular telephone number(s) at which she or he received was sent a text message; and (4) a current contact telephone number. Once a Settlement Class member submits a Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will then be eligible to automatically receive payment. Untimely Claim Forms will be rejected and those Settlement Class Members will not receive a Settlement Fund Payment. If those same Settlement Class Members also fail to timely opt-out, they will remain in the Settlement Class and their claims will be released. Claim Forms can be submitted until 15 days following the Final Approval Order.

### 6. Allocation of the Settlement Fund Payments

Each Settlement Class Member who timely files with the Settlement Administrator a valid Claim Form shall receive a cash distribution payable by check of $7.50 less any Notice and Administration Costs. Settlement Class Claimants will be sent their Claim Settlement Payments to the address they submitted on their Claim Form within 60 days following the Effective Date. Agreement at II.B.1.

### 8. Release of Claims

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, agree to the release as defined in Section V of the Agreement.

### C. Argument

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

#### 1. Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights

Defendant maintained contact information for the majority of the Settlement Class. Therefore, the Notice Program consisted of: (1) email notice ("Email Notice") designed to reach those Settlement Class members for whom Defendant maintained email addresses; (2) direct mail postcard notice ("Mailed Notice") for any Settlement Class members for whom the company did not maintain an email address, as well as for email attempts that turned out to be undeliverable; and (3) a "Long-Form" notice with more detail than the email and direct mail notices, which has been available on the Settlement Website and via mail upon request; and (4) a Settlement Website, Settlement Email Address and Toll-Free Telephone Number. *See* Declaration of Jennifer M. Keough ¶¶ 8-14, attached as *Exhibit B* ("Keough Decl.").

The Notice Administrator received data from Defendant containing 155,818 unique class member phone numbers as well as names and/or address or email addresses corresponding with many of the phone numbers. *Id.* at ¶ 5. Prior to mailing and emailing notices, the Administrator analyzed the data by conducting reverse address lookups for all records. *Id.* at ¶ 6. The Administrator then further analyzed the data to remove duplicate records and records that

contained neither an email address or mailing address, leaving an overall total of 174,424 Settlement Class members with valid addresses and/or email addresses. *Id*.

The Notice Administrator emailed 196,314 valid email addresses on record, encompassing 124,164 unique Settlement Class members, as there was more than one email address associated with many of the class member records. *Id.* at ¶ 8. For those Settlement Class members for which the company had only mailing addresses, the Administrator ran them through the National Change of Address Database and then mailed a total of 60,693 Notices to Settlement Class members, which included both first time mailings and individuals for whom the Email Notice was undeliverable. *Id.* at ¶ 9. As of October 22, 2019, the Administrator's records show that 165,206 of the 174,424 Settlement Class members were either emailed or mailed a Notice which was not returned as undeliverable. *Id*. at ¶ 10.

The Notice Administrator also established the Settlement Website, www.yftcpasettlement.com, which went live on July 29, 2019. *Id.* at ¶ 12. The Settlement Website enables Settlement Class members to get information about the litigation, file a claim online, and find downloadable copies of the Settlement Agreement and its Exhibits; the Class Notice and Claim Form; and the Preliminary Approval Order, as well as other important court documents. *Id.* As of October 22, 2019, the Settlement Website had a total of 12,978 unique visitors and 42,232 page views.  *Id.* at ¶ 13. The Administrator also established a Settlement Email Address, info@yftcpasettlement.com, for individuals to ask questions pertaining to the Settlement. *Id*. at ¶ 14. As of October 22, 2019, the Settlement Email has received 25 communications. *Id*. The Administrator will continue to maintain the Settlement Website and Settlement Email Address throughout the Settlement administration process. *Id*. at ¶ 13-14. In addition, a toll-free number, was established. *Id*. at ¶ 11. By calling, Settlement Class members may obtain information regarding the Settlement via a recorded option menu. *Id*. As of October 22, 2019, the toll-free telephone number has received 259 calls. *Id*.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d at 1104-05.  The Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement,

as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out, and told them where to get more information – for example, the Settlement Website has a copy of the Agreement, as well as other important documents. Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

At the conclusion of the notice program, the Settlement Administrator had received one request for exclusion and ***no objections*** to the Settlement had been filed.[2] The opt-out and objection period has ended.

### 2. The Settlement Should Be Approved as Fair, Adequate and Reasonable.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;

---

[2] Attached as *Exhibit D* is the name of the single individual that requested to opt-out of the settlement.

>   (4) the probability of the plaintiffs' success on the merits;
>   (5) the range of possible recovery; and
>   (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### i. There Was No Fraud or Collusion

The contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties").

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. Class Counsel and Defendant engaged in formal mediation with Rodney Max. All negotiations were arm's-length and extensive. S*ee Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

### ii. The Settlement Will Avert Years of Complex Expensive Litigation

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to a Settlement Class comprised of 155,818 Settlement Class Members. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

>   The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the

> mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id.* at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

### iii. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgement

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of targeted informal and formal discovery as well as 30(b)(6) deposition. Specifically, Class Counsel reviewed numerous pages of documents and electronic data, a party deposition, and third-party discovery. Plaintiff also spent considerable time researching and navigating Defendant's numerous defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate with the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis. *Id.* at ¶ 6.

### iv. Plaintiff and the Class Still Faced Significant Obstacles to Prevailing

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993). Class Counsel believes that Plaintiff had a strong case against Defendant. Even so, Class Counsel are mindful that Defendant advanced significant defenses, including defenses to class certification, that would have been

9

required to overcome in the absence of the Settlement. This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, class certification, a motion for summary judgment, *Daubert* motions, trial, as well as appellate review following a final judgment. *Id*. Notably, the likely crux of Defendant's intended motion for summary judgment was that the software Defendant used to transmit text messages was not an autodialer as defined by the TCPA. Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. The uncertainties and delays from this process would have been significant.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

### v. The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Each Settlement Class Claimant who opted to participate in the settlement will receive $7.50 less Notice and Administration costs, Attorney's Fees, and Service Award. Agreement at II.B.1. Settlement Class Members can continue to submit Claim Forms up and through fifteen days after the Final Approval Hearing. Pursuant to the TCPA, each injured Settlement Class member could

have received $500.00 for each violative message received upon a successful verdict at trial, but such a result was very uncertain and would have required years of litigation.

This Settlement provides an extremely fair and reasonable recovery to Settlement Class members when considering Defendant's defenses, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts.

>    **vi.    The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval**

Class Counsel strongly endorse the Settlement. *Id.* at ¶ 11. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

Plaintiff does not anticipate opposition to the Settlement and will provide a declaration to the court at the close of the Objection and Opt-Out Deadline. Even if there are some objections (and while there are none at this time), it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

>    **3.    The Court Should Certify the Settlement Class**

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions

11

of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy. For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 155,818 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendant's messaging marketing program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class members because she received text messages and suffered the same injuries as them and because they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 314 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000)

(internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate and reasonable.

## III.   CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as *Exhibit C*; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Cydney Halperin as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph 7 of the Agreement; and (5) enter Final Judgment dismissing the Action with prejudice. Defendant and its counsel have no opposition to this motion.

Date: October 25, 2019

Respectfully submitted,

| | |
|---|---|
| **SHAMIS & GENTILE, P.A.**<br>Andrew J. Shamis<br>Florida Bar No. 101754<br>ashamis@shamisgentile.com<br>14 NE 1st Avenue, Suite 1205<br>Miami, Florida 33132<br>(t) (305) 479-2299<br>(f) (786) 623-0915 | **EDELSBERG LAW, PA**<br>/s/ Scott A. Edelsberg<br>Scott Edelsberg, Esq.<br>Florida Bar No. 0100537<br>scott@edelsberglaw.com<br>20900 NE 30th Ave #417<br>Aventura, FL 33180<br>Telephone: 305-975-3320 |

**KAUFMAN P.A.**
Avi R. Kaufman, Esq.
Florida Bar No. 84382
kaufman@kaufmanpa.com
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
*Counsel for Plaintiff and the Class*